CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
August 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **JOANNE K. PELTIER,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 6:25-cv-00103** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | **By: Michael F. Urbanski** |
| **SOCIAL SERVICES, et al.** | ) | **Senior United States District Judge** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court plaintiff Joanne K. Peltier's application to proceed in forma pauperis, ECF No. 2, motion to utilize the CM/ECF electronic filing system, ECF No. 3, three motions for temporary restraining orders and preliminary injunctions, ECF Nos. 4, 6, 9, and amended complaint, Am. Compl. ("Am. Compl."). This matter was referred to the Honorable C. Kailani Memmer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. ECF No. 8.

The magistrate judge filed a Report and Recommendation ("R&R") on March 9, 2026, ECF No. 11, recommending that this court grant the application to proceed in forma pauperis, dismiss the initial complaint and amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and deny as moot all other pending motions. Pelter has filed an objection to the Report and Recommendation, ECF No. 12. The court has carefully reviewed the magistrate judge's report, the responses to the report, the pertinent portions of the record, and the relevant legal authority. For the reasons stated below court is of the opinion that the Report and Recommendation should be **ADOPTED with modifications.**

## I. Background

Ms. Peltier filed suit on December 1, 2025, alleging violations of federal and state law by state and local agencies and individual defendants in Lynchburg, Virginia, stemming from state court custody proceedings involving her four children. ECF No. 1. ("Compl.") Peltier raises claims against various defendants, including: the Virginia Department of Social Services (DSS); Lynchburg Department of Human Services (DHS); the Texas Department of Family & Protective Services (DFPS/CPS); the Virginia Guardian ad Litem Program;[1] Joseph Peltier; Christina Crouch (the guardian ad litem appointed in Virginia); as well as various placeholder defendants (DOE CPS Defendants 1-50, DOE GAL Defendants 1-25, DOE Supervisor Defendants 1-20, DOE Attorney Defendants 1-25, and DOE Private Individual Defendants 1-50).

Ms. Peltier's claims stem from the contention that Texas held "exclusive, continuing jurisdiction over Plaintiff's children since 2014," and thus subsequent custody orders from authorities in Lynchburg, Virginia were unauthorized and void, which "obstructed Plaintiff's federally protected rights." Id. at 3. Peltier alleges that, "despite lacking home-state jurisdiction under the UCCJEA," Virginia authorities issued custody-related orders involving Peltier's four children in reliance on "unverified and inaccurate statements from Joseph [Peltier] regarding parentage, legal status, and existing Texas orders," and without meaningfully attempting to notify Peltier of the ongoing proceedings. Id. at 6-7. She further alleges that despite her insistence to the Virginia authorities that the Commonwealth lacked jurisdiction over these

[1] The court notes, as did the magistrate judge, that "there is not a state-created entity known as the 'Virginia Guardian Ad Litem Program.'" ECF No. 12 at 15.

cases, those Virginia authorities failed to verify whether the 2019 orders were void. Id. at 7-9. She alleges that the continued reliance of Virginia authorities on these "void 2019 orders" compounded this injury, as did subsequent custody orders from Virginia in 2022 and 2025. Id. At a hearing in 2022, Virginia authorities "asserted that 'Texas declined' jurisdiction," a claim that Peltier alleges is untrue. Id. at 8. Her original complaint raises eight claims:

Count I - a 42 U.S.C. § 1983 Fourteenth Amendment Due Process claim alleging that defendants "deprived [Peltier] of due process by removing the children without notice, without a valid allegation against [her], without an evidentiary hearing, without participation rights, and without compliance with" the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") and Parental Kidnapping Prevention Act ("PKPA"). Compl. at 11.

Count II – a 42 U.S.C. § 1983 Equal Protection claim alleging that defendants "treated [Peltier] differently from similarly situated parents by refusing to recognize valid Texas custody orders, denying participation, and applying different standards solely because [she] resided out of state." Id. at 11.

Count III – Monell municipal liability claims against the Virginia Department of Social Services ("DSS"), Lynchburg Department of Human Services ("DHS"), Virginia Guardian ad Litem Program, and the Virginia Division of Child Support Enforcement ("DCSE") alleging that each had a practice of ignoring complaints and claims like hers, and/or failed to train its employees to confirm the jurisdiction of other agencies and the validity of custody orders before acting on those orders. Id. at 12-14. In this claim, Peltier also alleges that these agencies failed to act on the reports of harm she made to those agencies in 2018, 2022 and 2025. Id.

Count IV – a 42 U.S.C.§ 1985(3) civil rights conspiracy claim against all defendants except the Texas Department of Family & Protective Services. Id. at 15-16.

Count V – a claim alleging violations of PKPA. Id. at 16/

Count VI – a claim alleging "Deprivation of Federal Rights" under UCCJEA. Id. at 17.

In Counts VII and VIII, Peltier seeks declaratory and injunctive relief and attorney's fees for Counts I-VI. Id. at 17-18.

Also on December 1, 2025, Peltier filed a Pro Se Motion for Leave to Proceed in forma pauperis (ECF No. 2), a Pro Se Motion to Utilize CM/ECF Electronic Filing System (ECF No. 3), and a motion for a Temporary Restraining Order and Preliminary Injunction based on the allegations made in her complaint (ECF No. 4). On December 29, 2025, Peltier filed an amended motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 6), which she "renewed" with an additional filing on February 6, 2026 (ECF No. 9).

Additionally, on February 17, 2026, Peltier filed additional claims in a "First Amended and Supplemental Complaint." Am. Compl. In that amended complaint, Peltier alleges that "[d]efendants engaged in additional acts affecting [p]laintiff's constitutional rights, including but not limited to unequal appellate processing, defective service and address alteration, disclosure of confidential contact information, coercive ICPC-related actions absent adjudication of unfitness, and continued procedural due process violations." Id. at 3. She specifies that she "does not seek federal relitigation of custody merits," and instead "seeks only redress for procedural and constitutional violations that impaired [her] ability to ensure continuity of educational, counseling, and medical services for the minor child and to

participate meaningfully in proceedings affecting the child's welfare." Id. at 3-4. She adds several allegations to her original complaint:[2]

Count IX – a 42 U.S.C. § 1983 Fourteenth Amendment claim alleging "[u]nequal processing of filings and irregular service procedures" in "ongoing state proceedings." Id. at 4-5.

Count X – a 42 U.S.C. § 1983 Fourteenth Amendment claim alleging the "denial of meaningful access to courts"—specifically, that Ms. Peltier has "not been permitted to fully present or argue jurisdictional facts in open hearing" and that her records requests have been ignored. Id. at 5-6.

Count XI – a 42 U.S.C. § 1983 Fourteenth Amendment claim alleging that Ms. Peltier was not permitted to argue about nor was she was "provided access to any transcript, recording, written memorandum, or formal record" documenting that Texas had "'declined' jurisdiction" over the custody case involving her children. Id. at 6. She also alleges that she was "not afforded an opportunity to present jurisdictional facts before the court relied upon the purported interstate determination." Id.

[2] Under Federal Rule of Civil Procedure 15(a)(1), "a party may amend its pleading once as a matter of course no later than … 21 days after serving it." Because Ms. Peltier's pro se motion for leave to proceed in forma pauperis (ECF No. 2) is still pending, defendants have not been served in this case. She amended once as of right.

When a party amends their complaint, it typically supersedes the original complaint becomes the operative complaint in the case, "render[ing] the original complaint of no effect." Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017). Here, the "First Amended and Supplemental Complaint" adds additional facts, does not repeat any of her original complaint and begins its recitation of claims beginning with Count IX. Am. Compl. at 1-3. Construing Ms. Peltier's pro se pleading liberally, Estelle v. Gamble, 429 U.S. 97, 106 (1976), the court considers all fourteen counts and facts alleged in both the original complaint (ECF No. 1) and the amended and supplemental complaint (ECF No. 10).

Count XII – a 42 U.S.C. § 1983 Fourteenth Amendment claim alleging that because Peltier has not been adjudicated an unfit parent, state actors' conditioning of reunification with her children upon her compliance with discretionary interstate procedures violates her fundamental parental liberty interests. Id. at 7.

Count XIII – a claim brought under 42 U.S.C. § 1983 and "ADA/Section 504 where applicable" alleging that state actors referenced Peltier's mental health history and raised mental health references in connection with the placement of her children, and that the state's "reliance on perceived mental health status without adjudication or procedural safeguards implicates due process and federal disability protections where applicable." Id. at 7-8.

Count XIV – a claim brought under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act alleging that the Virginia DSS did not review Peltier's complaints that her children's previously documented educational accommodations, counseling services and medical supports were discontinued when the children's custody was transferred.

Upon review of all pending motions, the magistrate judge filed a report & recommendation on March 9, 2026. ECF No. 11. In the report & recommendation, the magistrate judge recommended that the court grant Peltier's in formal pauperis application (ECF No. 2), and dismiss Peltier's complaint (ECF No. 1), as supplemented, (ECF No. 10), on several grounds. ECF No. 11. Generally, the magistrate judge's report and recommendation finds that most of the defendants are immune from this suit or are non-suable entities, and that the remaining claims are either barred by the Rooker-Feldman doctrine or seek redress for claims for which there is no federal private right of action. Id.

More specifically, the magistrate judge recommended dismissing Peltier's complaint and its supplement for failure to state a claim because: (1) the Lynchburg Department of Human Services is non sui juris, (2) the DOE defendants are both insufficiently specified and the complaints include no allegations of wrongdoing against them; (3) Eleventh Amendment immunity bars Ms. Peltier's 42 U.S.C. § 1983 and civil conspiracy claims against the Virginia Department of Social Services, the Virginia Division of Child Support Enforcement, the Virginia Guardian ad Litem Program, and Texas Department of Family and Protective Services; (4) defendant Crouch, as guardian ad litem for the children in state child custody proceedings, is immune from this suit; (5) 42 U.S.C. § 1983 claims cannot be raised solely against Joseph Peltier, a private individual; (6) there is no private right of action for violations of the PKPA or UCCJEA; and (7) the court is prohibited from reviewing Ms. Peltier's claims seeking review of her state-court proceedings by the Rooker-Feldman Doctrine. Id. at 8-23. The magistrate judge recommends denying the remaining pending actions as moot. Id. at 23.

Peltier filed her objections to the magistrate judge's report and recommendations on March 19, 2026, which the court considers in this memorandum opinion. ECF No. 12.

## II. Legal Standard – Objections under Fed. R. Civ. P. 72(b)

Any party may "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen (14) days of being served with a copy of the report, per Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1). The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has

made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). "By definition, de novo review entails consideration of an issue as if it had not been decided previously." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992), as amended (Aug. 12, 1992).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011) (per curiam). See also Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the

report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . ..")

Nevertheless, as the court clarified in Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023), "objections need not be novel to be sufficiently specific."

> In Martin v. Duffy, 858 F.3d 239, 245–46 (4th Cir. 2017), this Court exemplified the specificity analysis by looking solely to whether the grounds for objection were clear. There, an objection which merely "restated all of [the] claims" was sufficiently specific because it "alerted the district court that [the litigant] believed the magistrate judge erred in recommending dismissal of those claims." Id. at 246. If the grounds for objection are clear, district court judges must consider them de novo, or else run afoul of both § 636(b)(1) and Article III.

If a litigant could not restate his argument to the district judge, in addition to "needlessly curtailing litigants' access to an Article III judge, such a requirement could leave litigants with no available arguments, as district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation." Id. at n.4.

In the absence of a specific, proper, and timely filed objection, a court reviews an R&R only for "clear error" and need not give any explanation for adopting the R&R. Carr v. Comm'r of Soc. Sec., No. 3:20-cv-00425-FDW-DSC, 2022 WL 987336, at *2 (W.D.N.C. Mar. 31, 2022) (citing Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005), and Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983)). Under those circumstances, a

court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (quoting Fed. R. Civ. P. 72 advisory committee's note).

## III. ECF No. 2 – Motion for Leave to Proceed In Forma Pauperis

In the R&R, the magistrate judge recommends that the court grant Peltier's motion to proceed in forma pauperis, ECF No. 2. ECF No. 11. Ms. Peltier raises no objection to this recommendation. Finding no clear error,[3] the court **ADOPTS** the magistrate judge's recommendation as to ECF No. 2 and **GRANTS** Peltier's motion for leave to proceed in forma pauperis.

## IV. ECF Nos. 1 and 10 – Complaint and Amended Complaint.

In the R&R, the magistrate judge recommends that the court dismiss Peltier's complaint (ECF No. 1) as amended and supplemented (ECF No. 10) for failure to state a claim. ECF No. 11 at 23-24. Peltier filed her objections to the R&R on March 19, 2026. ECF No. 12.

The written objections are difficult to parse. Generally, Peltier argues that the R&R "relies on factual assumptions and legal conclusions that Plaintiff contends are incorrect." ECF No. 12 at 10.

### 1. Agreements

[3] Indeed, the magistrate judge made a finding with respect to Peltier's ability to pay the fees required to commence suit, and "the proper procedure is for the district court to consider only a petitioner's economic status in making the decision whether to file a pro se complaint in forma pauperis." Gent v. Dep't for Rts. of Virginians with Disabilities, 83 F.3d 414, 414 (4th Cir. 1996).

As an initial matter, the court notes that several of the so-styled objections filed at ECF No. 12 affirm Peltier's agreement with parts of the magistrate judge's report, and seek the same outcome as recommended in the R&R.

First, the court notes that Peltier raises no objection to the magistrate judge's R&R with respect her 42 U.S.C. § 1985 Civil Rights Conspiracy claim (Count IV). The R&R found Peltier's Count IV § 1985 conspiracy allegations conclusory and recommended it be dismissed without prejudice. ECF No. 11 at 14-16. Ms. Peltier asks that she be "given leave to amend rather than dismissal with prejudice." ECF No. 12 at 21.

The R&R's recommended disposition of this claim, dismissal without prejudice, leaves a plaintiff free to "amplify the factual and legal basis on which [her] claim rests and refile the claim(s)." Clarke v. City of Petersburg, No. 3:15CV470-HEH, 2015 WL 13604126, at *2 (E.D. Va. Aug. 21, 2015), aff'd, 696 F. App'x 644 (4th Cir. 2017); Mallory v. Virginia Dep't of Corr., No. 3:14CV734-HEH, 2014 WL 11512878, at *1 (E.D. Va. Nov. 25, 2014)(same); see also Ferguson v. Hamilton, No. 7:21-CV-00601, 2022 WL 4099742, at *1 (W.D. Va. Sept. 7, 2022)("A dismissal without prejudice would allow [plaintiff] to refile [her] claim, subject to the applicable statute of limitations.") The magistrate judge's recommendation of dismissal without prejudice for this claim aligns with the Fourth Circuit's policy:

> The Fourth Circuit has indicated that where a plaintiff has not been afforded an opportunity to amend, and his complaint is dismissed because the "plaintiff fails to allege sufficient facts against a particular defendant to survive a Rule 12(b)(6) motion," Alley v. Yadkin Cnty. Sheriff Dep't., 698 F. App'x 141, 142 (4th Cir. 2017) (citing King v. Rubenstein, 825 F.3d 206, 225 (4th Cir. 2016)), the dismissal should generally be without prejudice and the plaintiff afforded an opportunity to amend his complaint, King, 825 F.3d at 225; see Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965) (per curiam) (holding that, if a pro se complaint

> contains a potentially cognizable claim, the plaintiff should be given an opportunity to particularize his allegations). Accordingly, Plaintiff will be allowed leave to file an amended complaint to cure his deficiencies.

Pulley v. Zoley, No. 1:23CV846 (RDA/JFA), 2024 WL 3884192, at *5 (E.D. Va. Aug. 20, 2024).[4]

Accordingly, the court finds that Peltier does not raise an objection to the magistrate judge's R&R with respect to Count IV. Finding no specified objections, the court reviews the R&R for clear error. Roach, 417 F. App'x at 314 (4th Cir. 2011) (per curiam); Carr, 2022 WL 987336, at *2. Having reviewed the R&R, the court finds no clear error in the R&R with respect to Count IV.

Second, the court notes that Peltier does not object to the magistrate judge's finding that there is no federal private right of action under the PKPA or UCCJEA. ECF No. 12 at 21 ("the PKPA and UCCJEA may not themselves provide damages actions"); ECF No. 11 at 16-18. See also Schumacker v. Washington, No. C14-5966 BHS, 2015 WL 300496, at *2 (W.D. Wash. Jan. 22, 2015)("Neither the UCCJEA nor the PKPA provides a private right of action in federal court.")(citing Thompson v. Thompson, 484 U.S. 174, 187 (1988); Becker v. State of Cal., 17 F.3d 393 (9th Cir. 1994)). Instead, she maintains that those statutes "remain relevant statutory frameworks governing interstate custody jurisdiction" and "[t]hese statutes provide context for Plaintiff's constitutional claims concerning jurisdictional irregularities and procedural violations." Id. Thus, the court finds no specific objection raised to the R&R's

[4] The court notes that Ms. Peltier has already, in fact, amended her complaint. Am. Compl. Because the court is construing ECF No. 1 and ECF No. 10 together as a single, supplemented complaint, the court believes this policy to still be appropriate in Ms. Peltier's case.

finding that there is no federal private right of action under those statutes, or its recommendation that Counts V and VI be dismissed with prejudice. Having reviewed the R&R, the court finds no clear error with respect to Counts V and VI.

Third, Peltier raises no objections to the R&R with respect to Counts VII and VIII, or the magistrate judge's finding that those counts state remedies rather than separate causes of action. ECF No. 11 at 19 (citing Kim v. Rector & Visitors of Univ. of Va., No. 3:25-cv-00054, 2025 WL 3046192, at *12 (W.D. Va. Oct. 31, 2025)). Having reviewed the R&R, the court finds no clear error with this analysis.[5]

Fourth, Peltier files no specified objection to the magistrate judge's finding that her complaint insufficiently states claims against the DOE defendants, ECF No. 11 at 8-10. The magistrate judge recommends that the claims against those DOE defendants be dismissed without prejudice, except for Counts V and VI (the PKPA and UCCJEA claims, for which she recommends dismissal with prejudice). Id. at 23. In her objections, Peltier seeks leave to amend her complaint to provide further identifying information about the various DOE defendants. ECF No. 12 at 25, 38, 42-43. Because the R&R recommends dismissal without prejudice for those claims, the court finds no specified objections are raised as to the R&R's

[5] The court notes that the relief sought in Counts VII and VIII is unavailable, even if liberally construed.

As described infra, Count VII seeks "Declaratory and Injunctive Relief" that would overturn a state custody order. Although the court liberally construes these demands for relief as part of Ms. Peltier's remaining claims, there is no claim to which they would apply over which this court has jurisdiction because of the Rooker-Feldman doctrine.

In Count VIII, Peltier, who files pro se, seeks attorney's fees. "Attorney's fees or like compensation are not available to a pro se party under [Federal Rule of Civil Procedure] 4(d)(2)." Justice v. White, No. 5:13-CV-548-FL 2, 2014 WL 30322, at *1 (E.D.N.C. Jan. 3, 2014)(citing Prousalis v. Jamgochian, 38 Fed. App'x 903, 905 (4th Cir. 2002)).

findings with respect to the DOE defendants. Having reviewed the R&R, the court finds no clear error.

Fifth, Peltier raises no objection to the magistrate judge's R&R with respect to its finding that the Lynchburg Department of Human Services is non sui juris and its recommendation that all counts against that particular entity be dismissed with prejudice. ECF No. 12 at 14, 20. Rather than raising a specified objection on this point, she "respectfully requests leave to amend to substitute the proper municipal entity or officials responsible for the challenged conduct." Id. In this, plaintiff agrees with the R&R, because dismissal without prejudice on those claims gives Peltier leave to refile more specified allegations. This is not, in the court's view, an objection to the magistrate judge's recommendation. Having reviewed the R&R, the court finds no clear error with the R&R's analysis on this point.

Finding no clear error on these points, the court **ADOPTS the report and recommendation with respect to Counts IV, V, VI, VII, VIII, the DOE defendants and the Lynchburg Department of Human Services.**

**2. Specified Objections**

After a thorough review of the 73 pages of Ms. Peltier's written objections, the court understands Peltier's specified objections as follows:

1. Rooker-Feldman: Citing Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), Thana v. Bd. of License Comm'rs., 827 F.3d 314 (4th Cir. 2016), and Skinner v. Switzer, 562 U.S. 521 (2011), Peltier objects that the R&R's application of the Rooker-Feldman doctrine to her state due process claims is

inappropriate because she says she is not seeking to overturn the state court judgments. Id. at 3-6, 9, 11-12, 17-19, 24-25, 49-51, 53-56, 60-61.

2. Immunity: Peltier objects to the R&R's application of immunity doctrines, arguing that those doctrines "do not apply where officials violate clearly established constitutional rights or engage in investigative conduct outside protected judicial functions." Id. at 11 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982); Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Kalina v. Fletcher, 522 U.S. 119 (1997)), 15-16 (citing Ex parte Young, 209 U.S. 123 (1908); Troxel v. Granville, 530 U.S. 57 (2000)), 19-20, 25-36, 51-53, 66-67, 72.

3. Because of the magistrate judge's recommendations based on Rooker-Feldman abstention and findings of immunity, Peltier objects that the R&R "fails to address the denial of due process" by the state actors. Id. at 5-6 (citing Matthews v. Eldridge, 424 U.S. 319, 333 (1976)), 13 (listing the alleged due process violations in the state custody proceedings), 18, 21-22 (adding to this argument, invoking the Supremacy Clause and the PKPA), 22-23 (arguing that the R&R insufficiently addresses the PKPA and UCCJEA, which provide context for her due process claims), 37-38 (same, adding the Interstate Compact on the Placement of Children), 41-42, 43-49, 57-63.

4. Monell Liability: Peltier objects that the R&R inadequately considered her municipal liability claims and does not permit sufficient factfinding on those claims before recommending their dismissal. Id. at 11, 14-15, 23-24, 27, 36-37, 39-41, 65-

66, 72. She asks that the court grant her leave to amend her complaint if it finds those pleadings deficient. Id. at 14.

5. § 1983 Claims: Citing Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982), Peltier argues that the R&R erroneously recommends dismissing her 42 U.S.C. § 1983 claim against Joseph Peltier, a private actor, because "private actors may act under color of state law when they engage in joint participation or conspiracy with state officials." ECF No. 12 at 20.

6. Disability Claims: Peltier objects that her claims made under federal disability statutes "cannot be resolved without factual development." Id. at 11. 42, 67-69. She also argues the R&R inappropriately recommends dismissal of her Section 504 claim, Id. at 37, and that the Report "does not meaningfully analyze these claims or apply the governing legal standards under the ADA or Section 504," Id. at 68.[6]

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

**3. De Novo Review.**

The court undertakes a de novo review of those portions of the R&R to which these specified objections were made. Fed. R. Civ. P. 72(b)(3). Again, "de novo review entails consideration of an issue as if it had not been decided previously." George, 971 F.2d at 1118. Construing Peltier's complaints and objections liberally, these objections apply to Ms. Peltier's

[6] The court notes that the R&R conducted an analysis of Ms. Peltier's Section 504 claim. ECF No. 11 at 20, n. 10.

§ 1983 claims[7] and "ADA/Section 504 where applicable" claims, (Counts I, II, III, IX, X, XI, XII, XIII, and XIV). Am. Compl. at 7 ("where applicable").

The court notes that it has a duty to screen initial filings, and "the obligation to determine whether the … complaint … should be permitted to proceed." Breeden v. Bailey, No. 5:18-CV-00048, 2018 WL 3614216, at *1 (W.D. Va. July 27, 2018).

> Specifically, pursuant to 28 U.S.C. § 1915(e)(2)(B), a court shall "at any time" dismiss an in forma pauperis complaint if it "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii). In evaluating [plaintiff]'s pro se complaint, the court must construe the complaint liberally, holding it to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Id.

A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557). When a

[7] In Count III, Peltier alleges a separate municipal liability claim under Monell, rather than a § 1983 claim. In her objections, Peltier argues that the R&R insufficiently considered Monell liability. See, e.g., ECF No. 12 at 26. Monell is not a separate cause of action, but is rather an action that holds a municipality liable under § 1983. Monell v. Dep't. of Soc. Servs. Of City of N.Y., 436 U.S. 658, 694 (1978). The court construes Count III as a § 1983 claim, and addresses Count III in its analysis of Peltier's § 1983 claims.

complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)); see also Rashford v. Garland, No. 2:24-CV-04429-BHH-MGB, 2024 WL 4437727, at *2 (D.S.C. Sept. 17, 2024), report and recommendation adopted, No. 2:24-CV-4429-BHH, 2024 WL 4433420 (D.S.C. Oct. 7, 2024)("[T]he requirement of liberal construction does not mean that the court can ignore a clear failure to allege facts that set forth a cognizable claim in a federal district court.")(citing Weller v. Dep't. of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990)).

For complaints filed in in forma pauperis, like this one, the district court's duty to screen can include the consideration of certain defenses sua sponte. Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006)(noting that in in forma pauperis complaints, district courts have a duty to screen initial filings and therefore may consider certain defenses – like statutes of limitations and res judicata – sua sponte "when the face of the complaint plainly reveals the existence of such a defense"). This includes consideration of whether the defendants are immune from suit.[8] Neitzke v. Williams, 490 U.S. 319, 327 (1989)(explaining that the in forma pauperis statute "accords judges … the authority to dismiss a claim based

[8] Peltier objects to the R&R's treatment of immunity doctrines, arguing that "the Report applies these doctrines **too broadly and at an early stage of the proceedings before factual development has occurred.**" ECF No. 12 at 15 (emphasis in original); see also id. at 16 ("the Report's reliance on immunity doctrines should not result in dismissal of Plaintiff's claims at this early stage of proceedings."). Because the court's duty to screen includes an analysis of the merits of the claims as alleged, the court finds it is appropriate to address the issue of sovereign immunity at this stage of the proceedings. This objection is overruled.

on an indisputably meritless legal theory," including "claims against which it is clear that the defendants are immune from suit … and claims of infringement of a legal interest which clearly does not exist.")(citing Williams v. Goldsmith, 701 F.2d 603 (7th Cir. 1983)). 28 U.S.C. § 1915 directs courts to review immunity specifically, directing courts to "dismiss the case at any time if the court determines that … the action or appeal … seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Additionally, "[t]he court possesses the inherent authority to review a pro se complaint to ensure that the plaintiff has standing, that federal jurisdiction exists, and that the case is not frivolous[.]" Rashford v. Garland, No. 2:24-CV-04429-BHH-MGB, 2024 WL 4437727, at *2 (D.S.C. Sept. 17, 2024), report and recommendation adopted, No. 2:24-CV-4429-BHH, 2024 WL 4433420 (D.S.C. Oct. 7, 2024)(citing, inter alia, Ross v. Baron, 493 Fed. App'x. 405, 406 (4th Cir. 2012)).

"If a pro se complaint contains a potentially cognizable claim, the plaintiff should be afforded an opportunity to particularize his allegations." Pulley, 2024 WL 4844789, at *3 (summarizing Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)). Yet, where the district court finds that a civil action fails to state a claim, and where a plaintiff has been offered an opportunity to amend their complaint, "the district court has the discretion to afford the plaintiff another opportunity to amend, or it can dismiss the complaint with prejudice." Pulley, 2024 WL 4844789, at *3 n.4 (quoting United States ex rel. Angel v. Scott, 697 F. Supp.3d 483, 494-95 (E.D. Va. 2023)).

Because none of these remaining counts state a cognizable claim, they are dismissed with and without prejudice, as specified below.

### A. Subject-Matter Jurisdiction

First, the court must assure itself of its jurisdiction over these claims.[9] See, e.g. Riley v. Bondi, 606 U.S. 259, 273 (2025)("A federal court must always satisfy itself that it has jurisdiction.")(citing U.S. v. Kwai Fun Wong, 575 U.S. 402, 408-09 (2015)).

The relief sought in Peltier's complaint raises red flags with respect to this court's jurisdiction. In her original complaint, Peltier seeks declaratory and injunctive relief, including "a declaration that Virginia lacked jurisdiction, that the orders issued are void, and that Texas retains exclusive custody activity" as well as "an injunction preventing Defendants from continuing to interfere with Texas custody orders and requiring immediate compliance with federal law." ECF No. 1 at 17. This plainly seeks the "review and rejection" of the Virginia state custody order. Exxon, 544 U.S. at 284. The court lacks jurisdiction over claims seeking such relief under the Rooker-Feldman doctrine.[10]

"[N]o federal court other than the Supreme Court has jurisdiction to review a state court judgment." Palotai v. Univ. of Maryland at Coll. Park, 38 F. App'x 946, 953 (4th Cir.

---

[9] This is a point that Peltier emphasizes throughout her pleadings, albeit in a different context. See, e.g. ECF No. 12 at 21 ("Subject matter jurisdiction cannot be waived at any time. Courts are required to ensure that jurisdiction exists before proceeding.")

[10] The court notes that Peltier seeks similar relief in her motion for a temporary restraining order, including: an order prohibiting Virginia state officials from "enforcing, relying upon, or acting under any orders issued in Virginia related to" her children; an order declaring the Virginia custody-related orders void, and the return of Peltier's children. ECF No. 4 at 9. Her amended motion for a temporary restraining order seeks similar relief, including: an order "prohibiting Defendants from conducting further proceedings or enforcing orders without subject-matter jurisdiction," barring further hearings or enforcement actions, and ordering the preservation of a transcript and audio recording of her state court hearing conducted on December 12, 2025. ECF No. 6 at 7-8. Further, her "renewed" motion for a temporary restraining order seeks similar relief, including an order enjoining Virginia agencies from "exercising, asserting, or facilitating any custody-related authority over the minor children," an order barring home studies from Virginia authorities, declaring Texas jurisdiction, among other things. ECF No. 9 at 8-10. "Plaintiff seeks cessation, not modification, of void proceedings." Id. at 10. This, too, seeks the "review and rejection" of the Virginia custody orders.

2002). Where a federal court cannot rule on a plaintiff's clams "without reviewing the outstanding state court's judgment," it lacks jurisdiction. Id. at 954. "Under what has become known as the Rooker-Feldman doctrine, federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" T. M. v. Univ. of Maryland Med. Sys. Corp., 608 U.S. ___, 146 S. Ct. 1739, 1739–44 (2026)(quoting Exxon, 544 U.S. at 284). "This rule … applies even to constitutional claims where such claims are 'inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's [claim].'" Id. at 953 (quoting D.C. Ct. App. v. Feldman, 460 U.S. 462, 483-84 (1903); Czura v. Sup. Ct. of S.C., 813 F.2d 644, 646 (4th Cir. 1987))(also citing Guess v. Bd. of Med. Exam'rs of N.C., 967 F.2d 998 (4th Cir. 1992)). Courts in the Fourth Circuit have regularly applied Rooker-Feldman to claims challenging state child custody decisions in federal court:

> Other courts, including the Fourth Circuit and district courts within it, have concluded that the Rooker-Feldman doctrine would bar a federal court's consideration of claims like [plaintiff's]. Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs., 521 F. App'x 278, 291 (4th Cir. 2013) (holding that, because the plaintiff's "due process claim is a mere pretext for the real focus of the [c]omplaint, which challenges the validity of records and proceedings of the North Carolina courts that resulted in the termination of the [plaintiff's] parental rights," the Rooker-Feldman doctrine bars consideration of that claim); Johnson v. Byrd, No. 1:16CV1052, 2016 WL 6839410, at *7 (M.D.N.C. Nov. 21, 2016), aff'd, 693 F. App'x 219 (4th Cir. 2017); Davis v. Singer, No. 4:13cv7, 2014 WL 12598862 (E.D. Va. Aug. 5, 2014) (concluding that the Rooker-Feldman doctrine precluded consideration of plaintiff's civil rights complaint, which effectively challenged the termination of his parental rights and explaining that "a plaintiff may not seek a reversal of a state court judgment simply by recasting his complaint in the form a civil

> rights action pursuant to 42 U.S.C. § 1983") (quotation and citation omitted); Powell v. Williams, No. 5:14-CV-282, 2014 WL 3809964, at *3 (E.D.N.C. July 14, 2014) (holding that, "to the extent such [child custody or child support] matters have been determined by the state court, this court is ... barred by the Rooker–Feldman doctrine from reviewing the state court's decisions").

Vyas v. Sofinski, No. 7:23-CV-00075, 2023 WL 3562976, at *3-4 (W.D. Va. May 19, 2023), aff'd, No. 23-6561, 2023 WL 6058479 (4th Cir. Sept. 18, 2023) (holding that a plaintiff who was seeking "to challenge the terms of custody over his children, the limitations placed on his visits and contact with them, and his access to his records" was "effectively seeking a re-determination of issues already determined in the state court, which the Rooker-Feldman doctrine prohibits.").

To be sure, Rooker-Feldman does not bar all claims where there is parallel state and federal litigation. Exxon, 544 U.S. 280, 292 (2005); ECF No. 12 at 4, 12, 17, 18, 24, 50, 53, 56, 60 (objecting to the R&R because Rooker-Feldman is narrow in scope). But where, as in Peltier's complaint, the plaintiff is asking the court to review and undo the state court decision, this court lacks jurisdiction to review those claims. This court lacks jurisdiction over all claims seeking "Declaratory and Injunctive Relief" as described in Count VII. ECF No. 1 at 17-18.

In her supplemental complaint, Peltier seeks slightly different relief. She seeks declaratory relief that the defendants violated her constitutional rights, and "appropriate injunctive relief requiring Defendants to provide access to any interstate jurisdictional communication records relied upon, and to ensure equal procedural treatment of Plaintiff's filings and notices" as well as compensatory damages and attorney's fees.[11] Am. Compl. at 9-

[11] Attorney's fees are unavailable to pro se plaintiffs under Federal Rule of Civil Procedure 4(d)(2).

10. Peltier emphasizes in her supplemental complaint that she "does not seek federal relitigation of custody merits," and instead "seeks redress for denial of meaningful opportunity to be heard, unequal procedural treatment, failure to provide access to interstate jurisdictional communications, conditioning of parental rights without adjudicated unfitness, and failure to ensure continuity of documented services." Id. at 3.

The court is wary that this language is an "attempt to preempt application" of Rooker-Feldman, Vyas, 2023 WL 3562976, at *3, or that Peltier's remaining § 1983 claims are "a pretextual federal issue asserted solely for the purpose of having state-law claims, i.e., parental rights issues, adjudicated in the federal system." Stratton, 521 F. App'x at 291 (quoting Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999))(citation modified). The declaratory and injunctive relief sought in the supplemented complaint still suggests strongly to the court that these claims seek to relitigate state proceedings, and "federal courts must guard against" such a practice. Lovern, 190 F.3d at 655. If this is the case, then Rooker-Feldman bars the court's jurisdiction.

Construing Peltier's claim liberally, to whatever extent that these claims do not seek to "review and reject[]" the state court custody decisions, Rooker-Feldman would not bar this court's jurisdiction over them. Even then, however, the court finds it is required to dismiss all counts on alternate grounds.

**B. Sovereign Immunity**

Peltier's 42 U.S.C. § 1983 claims against the state defendants are barred by sovereign immunity.

In her complaint and supplemental complaint, Peltier raises claims against many defendants, including: the Virginia Department of Social Services, the Virginia Division of Child Support Enforcement,[12] the Lynchburg Department of Human Services (dismissed with prejudice as non sui juris), the Texas Department of Family and Protective Services, the "Virginia Guardian ad Litem Program" (which this court construes to mean the Virginia Judicial Council)[13], Joseph Franklin Charles Peltier, Christina Crouch ("in her individual and official capacities,") and the DOE defendants (against whom all counts are dismissed without prejudice). ECF No. 1. At 1-2; Am. Compl. at 1-2. Many of these entities are immune from suit because of sovereign immunity under the Eleventh Amendment.

"The eleventh amendment is … a jurisdictional bar to suits against states." Maybin v. Northside Corr. Ctr., 891 F.2d 72, 75 (4th Cir. 1989)(citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984); Westinghouse Elec. Corp. v. West Va. Dep't of Highways, 845 F.2d 468, 469 (4th Cir. 1988), cert. denied, 488 U.S. 855 (1988)). As enshrined in the Constitution, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This extends, too, to suits brought against a state by its own citizens. Edelman v. Jordan, 415 U.S.

---

[12] The court notes, as did the magistrate judge, that the Virginia Division of Child Support Enforcement is not a defendant in Peltier's original complaint, ECF No. 1, and that Peltier raises claims against the "DCSE" only in her Amended and Supplemental Complaint, ECF No. 10.

[13] The court notes, as did the magistrate judge, that "there is not a state-created entity known as the 'Virginia Guardian Ad Litem Program.'" ECF No. 12 at 15. Construing Peltier's complaint liberally, the R&R "construe[d] Ms. Peltier's claims against the Virginia Guardian ad Litem Program as claims against the Virginia Judicial Council which is an arm of the Commonwealth of Virginia." Id. Peltier raised no objection to this construction. ECF No. 12. Finding no clear error with this analysis, the court **ADOPTS** the R&R's construction of claims against defendant "Virginia Guardian ad Litem Program" as raised against the Virginia Judicial Council.

651, 662-63 (1974). Put another way, "[s]overeign immunity is the privilege of the sovereign not to be sued without its consent." Air Evac EMS, Inc. v. Cheatham, 260 F. Supp. 3d 628, 638 (S.D. W.Va. 2017)(quoting Va. Off. For Prot. And Advocacy v. Stewart, 563 U.S. 247, 253 (2011)). Thus, "[a]bsent waiver or Congressional abrogation, the Eleventh Amendment protects a State from private suit in federal court." Id. This "immunity applies to state agencies that may be properly characterized as 'arm[s] of the State,' as well as to state employees acting in their official capacity." Bonds v. Virginia, No. 7:21-CV-00363, 2021 WL 2827301, at *3 (W.D. Va. July 7, 2021), aff'd, No. 21-7146, 2021 WL 6067259 (4th Cir. Dec. 20, 2021)(quoting Harter v. Vernon, 202 F.3d 334, 337 (4th Cir. 1996)).

The Virginia Department of Social Services, the Virginia Division of Child Support Enforcement, the Texas Department of Family and Protective Services, and the Virginia Judicial Council[14] are such state agencies. Nowhere does Peltier allege that any of the state defendant entities have waived their sovereign immunity to her § 1983 claims.[15] Thus, the

---

[14] A party is an "arm of the state" for purposes of sovereign immunity based on an analysis of four non-exclusive factors:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;
> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;
> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

Weigel v. Maryland, 950 F. Supp. 2d 811, 830–31 (D. Md. 2013)(citing U.S. ex. Rel. Oberg. V. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 580 (4th Cir. 2012)). The Virginia Judicial Council is part of the judiciary branch, Va. Code § 17.1-700. It is composed of state court judges, meets annually, and evaluates and advises on the judicial system in the Commonwealth. Va. Code. §§ 17.1-700-703. It is an arm of the state.

[15] As Ms. Peltier pointed out in her objections, "[e]ntities receiving federal funding waive sovereign immunity for claims under Section 504." ECF No. 12 at 37. See also Spencer v. Earley, 278 F. App'x 254, 259 (4th Cir.

various state agencies that are defendants in this case are immune from suit and the court lacks jurisdiction to review Peltier's § 1983 claims against them. See Bd. of Sup'rs of Warren Cnty. v. Virginia Dep't of Soc. Servs., 731 F. Supp. 735, 740 (W.D. Va. 1990) ("the Eleventh Amendment bars any suit against … the Virginia Department of Social Services"); Godwin v. State of Virginia Child Support, No. CIV.A. 3:02CV421, 2002 WL 32349403, at *2 (E.D. Va. Aug. 30, 2002), aff'd sub nom. Godwin v. State of Virginia Child Support Enf't Div., 58 F. App'x 998 (4th Cir. 2003)("[plaintiff's] claim against the Division of Child Support Enforcement is barred by the Eleventh Amendment"); Cronen v. Texas Dep't of Hum. Servs., 977 F.2d 934, 938 (5th Cir. 1992)("the Eleventh Amendment bars [plaintiff]'s claims against Texas and the Texas Department of Human Services"). **The court therefore dismisses all § 1983 claims against the state entities without prejudice.**[16] See Lusk v. Merch., 182 F.4th 311, 318 n.4 (4th Cir. 2026)(("[D]ismissal on the basis of sovereign immunity 'should normally be without prejudice.'")(quoting Albert v. Lierman, 152 F.4th 554, 563 n.9 (4th Cir. 2025))).

Peltier objected to the magistrate judge's finding of sovereign immunity, arguing that the magistrate judge did not sufficiently consider Ex parte Young. ECF No. 12 at 15, 19. In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective equitable relief against state

---

2008)("This court has previously held that state agencies that knowingly and willingly accept clearly conditioned federal funding validly waive their Eleventh Amendment immunity with respect to claims for damages under § 504 of the Rehabilitation Act.")(citing Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 495-96 (4th Cir. 2005)). The court addresses the Section 504 claims separately.

[16] This dismissal includes Count III, Peltier's Monell claim, despite her objection that she should be permitted further factual development before dismissal. "[S]overeign immunity applies to § 1983 claims; thus, a state and its instrumentalities are not considered 'persons' that may be sued under § 1983." Cottrell on behalf of Est. of Cottrell v. Stepp, No. 2:18-CV-01281, 2019 WL 1140198, at *2 (S.D.W. Va. Mar. 12, 2019)(citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-67 (1989)).

officials to prevent ongoing violations of federal law. Biggs v. N.C. Dep't of Pub. Safety, 953 F.3d 236, 242 (4th Cir. 2020)(emphasis added). "[T]he Ex parte Young doctrine only allows suit for injunctive or declaratory relief against individual officers or officials of a state or local government, not against a state or state agencies." Libertarian Party of Va. v. Virginia State Bd. of Elections, No. 1:10-CV-615 LMB/TCB, 2010 WL 3732012, at *5 (E.D. Va. Sept. 16, 2010), aff'd sub nom. Libertarian Party of Va. v. Va. State Bd. of Elections, 434 F. App'x 174 (4th Cir. 2011). Peltier's § 1983 claims against state entities do not fit within this exception.

### C. Quasi-Judicial Immunity

The Fourth Circuit has recognized that guardians ad litem "are entitled to the absolute bar of quasi-judicial immunity for acts within a judicial role." Gordon v. Croutch, No. 1:20-CV-00801, 2021 WL 5238209, at *6 (S.D. W.Va. Jan. 20, 2021), report and recommendation adopted sub nom. Gordon v. Crouch, No. CV 1:20-00801, 2021 WL 4465940 (S.D. W.Va. Sept. 29, 2021)(citing Fleming v. Asbill, 42 F.3d 886, 889 (4th Cir. 1994)). As such, they are "immune from § 1983 liability." Fleming, 42 F.3d at 889 (4th Cir. 1994). All allegations in the complaint and supplement relating to Ms. Crouch stem from her judicial role as a guardian ad litem. Compl. at 8; Am. Compl. (generally).[17] And because "dismissal on judicial or quasi-

[17] Ms. Peltier objected to the magistrate judge's application of the quasi-judicial immunity doctrine on the grounds that the R&R did not adequately consider that "[a]bsolute or quasi-judicial immunity … does not apply to investigative conduct." ECF No. 12 at 11 (citing Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Kalina v. Fletcher, 522 U.S. 118 (1997)). In both Buckley and Kalina, the Supreme Court considered the circumstances in which a prosecutor has either absolute immunity (for their acts in the course of their role as advocates of the state) or qualified immunity (in their investigative acts). Buckley, 509 U.S. at 260; Kalina, 552 U.S. at 125-26. The analysis and rational used for prosecutors in determining the scope of their immunity are different from the absolute quasi-judicial immunity granted to guardians ad litem on all civil rights claims arising from their actions in a child custody dispute. Fleming, 42 F.3d at 889. Further, even if Buckley and Kalina applied to guardians ad litem, Peltier's complaint and supplement do not allege (and allege no facts to support a finding) that Ms. Crouch was engaged in investigative conduct outside of her core duties as a guardian ad litem. This objection is overruled.

judicial absolute immunity grounds is properly with prejudice," **the court dismisses all § 1983 claims against Ms. Crouch with prejudice.** McQune v. Hutto, No. CV 2:17-1747-RMG, 2017 WL 3868796, at *2 (D.S.C. Sept. 5, 2017); see also Ackbar v. Connor, No. CV 4:18-3181-RMG, 2019 WL 927354, at *2 (D.S.C. Feb. 26, 2019), aff'd, 776 F. App'x 141 (4th Cir. 2019).[18]

**D. Section § 1983 Claims Against a Private Party**

Applying the foregoing analysis, the only remaining claim alleged under 42 U.S.C. § 1983 are the claims raised against Joseph Peltier, a private individual. The court finds that the complaint and supplement do not state an actionable § 1983 claim against him.

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983 (emphasis added). To state a claim under § 1983, a plaintiff must allege facts supporting a reasonable inference that the defendant was acting "under color of" state law. Id. "The 'color-of-state-law' requirement is 'identical' to the Fourteenth Amendment's 'state action' requirement." Int'l Ass'n of Machinists & Aerospace Workers v. Haley, 832 F. Supp. 2d 612, 622 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012)(quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 929 (1989)).

---

[18] Peltier's objections to the R&R includes an objection that the magistrate judge insufficiently considered the doctrine of qualified immunity. ECF No. 12 at 15-16, 20, 27-35, 42, 49, 52-53, 66-67, 70. In light of this ruling, the court finds it unnecessary to determine whether this claim would be barred by qualified immunity. This objection is overruled.

It follows that "'[m]erely private conduct, no matter how discriminatory or wrongful,' is excluded from the reach of § 1983." Cox v. Duke Energy Inc., 876 F.3d 625, 632–33 (4th Cir. 2017)(quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). "Stated otherwise, to be sued under § 1983, a defendant 'must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that [it] is engaged in the state's actions.'" Id., (quoting DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999)). See also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 (4th Cir. 2009)(same). "In short, to be liable under § 1983, a party must be one 'who may fairly be said to be a state actor, such that 'the allegedly unconstitutional conduct is fairly attributable to the State.'" Id. (quoting Am. Mfrs. Mut. Ins., 526 U.S. at 50; Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, (1982)).

"Courts and commentators have articulated several tests under which 'the state-action label' may be applied to private actors. These tests include: the 'symbiotic relationship' test (the state profits from a private wrong); the 'public function' test (a private party performs a function that is traditionally the "exclusive prerogative of the state"); the 'close or joint nexus' test (the state orders, coerces, or significantly encourages private action); the 'joint participation test (a private citizen conspires with a state actor to violate constitutional rights); and the 'pervasive entwinement' test (the identity of the state and private actors largely overlap)." Int'l Ass'n of Machinists & Aerospace Workers v. Haley, 832 F. Supp. 2d 612, 623–24 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012). See also Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214, 217 (4th Cir. 1993)(identifying "four contexts" in which "[a] private party can be deemed a state actor," including: "(1) when the state has coerced the

private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.")

The complaint includes one allegation about Joseph Peltier's conduct. Peltier alleges that "Virginia relied on unverified and inaccurate statements from Joseph regarding parentage, legal status, and existing Texas orders," Compl. at 6, which the court understands as an allegation that Joseph Peltier provided inaccurate statements to Virginia authorities. There are no other non-conclusory allegations about Mr. Peltier in either the complaint or its supplement. This is insufficient to support a reasonable inference that Mr. Peltier acted under color of state law, including under any of these theories. Because this fails to state a claim, **the court dismisses all § 1983 claims against Joseph Peltier without prejudice.**

**E. Section 504 Claims**

Counts XIII and XIV allege violations of the "ADA/Section 504 where applicable." Am. Compl. at 7-8.

An actionable claim under Title II of the Americans with Disabilities Act (ADA) requires a showing from the plaintiff that "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016). And "[i]n order to establish a violation of the Rehabilitation Act, a plaintiff must

demonstrate that she is: '(1) a 'disabled individual' as defined in the [Rehabilitation Act]; (2) 'otherwise qualified' to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) that the program administering the activity receives federal financial assistance.' " Lucas v. VHC Health, 128 F.4th 213, 220 (4th Cir. 2025)(quoting Basta v. Novant Health Inc., 56 F.4th 307, 315 (4th Cir. 2022)).

The elements these two claims are largely similar. "To the extent possible, we construe the ADA and Rehabilitation Act to impose similar requirements." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012). However,"[t]he two statutes differ only with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." Id. at 461-462 (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir.1999)).

In Count XIII, Peltier alleges state actors' "[r]eliance on perceived mental health status without adjudication or procedural safeguards implicates due process protections and federal disability protections where applicable." Am. Compl. at 8. In Count XIV, Peltier alleges that her written concerns to the Virginia Department of Social Services that her childrens' counseling and medically supported services were discontinued were ignored. Id. at 8-9. She alleges that her children's services were discontinued, and "[d]espite receiving notice of these concerns, Virginia DSS did not initiate corrective review, ensure continuity of services, or formally evaluate the discontinuation of documented supports." Id. at 9.

Construing these claims liberally, the court finds that the complaint (ECF No. 1) as amended (ECF No. 10) fails to allege sufficient facts to state a claim under either statute. Thus, **the court dismisses the Section 504 claims in Counts XIII and XIV without prejudice.**

**V.**

For the reasons stated herein, the court **OVERRULES** plaintiff's objections, ECF No. 12, and the magistrate judge's report and recommendation, ECF No. 11, is **ADOPTED with modifications**, as follows:

Plaintiff Joanne K. Peltier's Complaint (ECF No. 1) and First Amended and Supplemental Complaint (ECF No. 10) are dismissed:

1. The magistrate judge's report and recommendation, ECF No. 11, is **ADOPTED with modifications.**
2. Plaintiff Joanne K. Peltier's motion for leave to proceed in forma pauperis, ECF No. 2, is **GRANTED;**
3. Plaintiff Joanne K. Peltier's Complaint (ECF No. 1) and First Amended and Supplemental Complaint (ECF No. 10) are dismissed as follows:
    a. All claims against the Lynchburg Department of Human Services are dismissed with prejudice;
    b. All claims against the DOE Defendants are dismissed without prejudice (except for Counts V, VI, VII, and VIII, which are dismissed with prejudice);
    c. All claims against Christina Crouch are dismissed with prejudice;

d. Counts I, II, III, IV, IX, X, XI, XII, XIII, and XIV are dismissed without prejudice; and

e. Counts V, VI, VII, and VIII are dismissed with prejudice.

4. All other pending motions are **DISMISSED AS MOOT.**

The clerk is directed to send a copy of this memorandum opinion to the pro se plaintiff.

It is **SO ORDERED**.

Entered: August 30, 2026



Mike Urbanski
Senior U.S. District Judge
2026.08.30 21:50:56 -04'00'

Michael F. Urbanski
Senior United States District Judge